51 Cal.3d 368 (1990)
795 P.2d 1244
272 Cal. Rptr. 787
In re MALINDA S., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
RUSSELL S., Defendant and Appellant.
Docket No. S012792.
Supreme Court of California.
September 6, 1990.
*372 COUNSEL
James G. Dunn, under appontment by the Supreme Court, for Defendant and Appellant.
Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Edward J. Mantyla, Deputy District Attorneys, for Plaintiff and Respondent.
De Witt W. Clinton, County Counsel (Los Angeles), David F. Skjeie, Deputy County Counsel, Thomas Lyon, Lloyd M. Harmon, Jr., County Counsel (San Diego), Susan Strom, Acting Chief Deputy County Counsel, Patricia L. Davis, Deputy County Counsel, Steven M. Woodside, County Counsel (Santa Clara), and L. Michael Clark, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Respondent.
John Y. Tremblatt, under appointment by the Court of Appeal, for Minor.
OPINION
LUCAS, C.J.
We granted review to decide whether a juvenile court may rely on "social studies"[1] prepared by a social worker when determining *373 whether a minor falls within its jurisdiction under Welfare and Institutions Code[2] section 300, subdivision (d).[3] We conclude the reports are competent to support such a determination and accordingly affirm the decision of the Court of Appeal so holding.

I. BACKGROUND
Malinda S. was born in June 1983. Her parents, Carol S. and Russell S., married in August 1984 and separated in January 1986. After the separation Malinda lived with her father on weekdays and spent weekends with her mother. Russell's grandmother helped care for Malinda during the week.
Carol claimed to have noticed behavioral changes in Malinda beginning in April 1987. According to Carol, Malinda became withdrawn, cried more readily, became upset when she saw people without clothes, and threw temper tantrums when it was time to return to her father's home. On September 11, 1987, Carol picked up Malinda from Russell's grandmother and took her home. That evening Carol gave Malinda a bath and believed she noticed a strong odor emanating from Malinda's vaginal area (which they referred to as her privates). According to Carol, she asked Malinda to wash her privates, but Malinda responded, "No, because they hurt." When asked why her privates hurt, Malinda allegedly replied, "Because my daddy has been touching my privates."
Carol filed a complaint with the San Diego County Department of Social Services (DSS), which then petitioned the juvenile court to find Malinda a dependent child of the court under section 300(d) by reason of Russell's sexual and emotional abuse.[4] Malinda was temporarily placed in foster care because Carol doubted she could care for Malinda on a full-time basis, but shortly thereafter Malinda was returned to Carol's home.
Social worker Kathy Davis interviewed Malinda on September 14, 1987. Malinda reportedly told her, "My daddy touches my private and I don't like it" and "Sometimes he kisses my private when I have an owie on it." *374 On September 16, 1987, social worker Michelle Neumann-Ribner conducted a videotaped examination of Malinda. At this interview Malinda played with anatomically correct dolls and demonstrated familiarity with body parts. She also made several statements such as "I don't like my dad, because he pulled my private off." Later that day, Susan Horowitz, M.D., examined Malinda's genitals and determined that an external redness and labial adhesion were consistent with a history of rubbing and external genital contact without penetration.
Social worker George Wulff observed Neumann-Ribner's interview with Malinda. Based upon this interview, the reports prepared by Neumann-Ribner and Dr. Horowitz, Wulff's own interviews with Malinda and her parents, and his own investigation, Wulff compiled a social study for the court's use at the jurisdictional hearing. This study set forth a summary of jurisdictional facts, a social assessment, an evaluation, a reunification plan, and a recommendation. The study attached the reports prepared by Neumann-Ribner and Dr. Horowitz.
Recanting her earlier statements, Malinda told Wulff on October 23, 1987, that she had made up the stories about her father touching her privates. Based on this repudiation Wulff prepared a supplemental social study. According to this supplemental study, when Wulff asked Malinda if anyone had told her to say she had lied, she responded that her great-grandmother had warned her "not to say anything bad about my daddy." Neumann-Ribner also reinterviewed Malinda and prepared a report, which Wulff attached to the supplemental study. During the interview Malinda allegedly reconfirmed that her father had touched her privates with his hand and penis "lots of times."
At the jurisdictional hearings,[5] the juvenile court heard testimony from Carol, Russell's grandmother, and Wulff. Although the attorneys for both Carol and Malinda indicated an intention to call Malinda as a witness, neither did so. Moreover, neither Neumann-Ribner nor Dr. Horowitz was called to testify.
Carol described the bathing incident and changes she noticed in Malinda's behavior. On cross-examination she admitted to recent custody disputes, which had culminated in Russell obtaining a court order to regain custody of Malinda.
Russell's grandmother testified she had also bathed Malinda on September 11, 1987 (the same day as did Carol), but did not notice any unusual *375 odors. She further stated she had observed no changes in Malinda's behavior and that Malinda was always "tickled" to see her father. Finally, she admitted that when Malinda asked her why she could not see her father, she had told Malinda, "I guess it's because you said bad things about your daddy."
Wulff's testimony was essentially limited to authenticating his social studies; he did not provide substantive testimony about the studies, other than to confirm he believed the statements attributed to Malinda were accurate. He did, however, state that based upon the various reports he believed Russell continued to pose a risk to Malinda.
Throughout the proceedings Russell objected to the admission of the social studies, maintaining they were incompetent to support a finding of jurisdiction. Rejecting Russell's arguments, the juvenile court admitted the original and supplemental social studies and specifically relied on those studies in finding jurisdiction. The Court of Appeal affirmed. Adhering to the view it expressed in In re Jose M. (1988) 206 Cal. App.3d 1098 [254 Cal. Rptr. 364], the majority declined to follow the contrary holding in In re Donald R. (1987) 195 Cal. App.3d 703 [240 Cal. Rptr. 821], and concluded the trial court acted properly in receiving and considering all the material contained in the social studies. A concurring opinion agreed in the result only.

II. STATUTORY CONSTRUCTION
(1a) The social studies at issue contain hearsay and even multiple hearsay. (See Evid. Code, § 1200.) The sole question before us is whether such studies are competent evidence to support a finding of jurisdiction under section 300.
According to section 355, in a section 300 jurisdictional hearing, "any matter or information relevant and material to the circumstances or acts which are alleged to bring [the minor] within the jurisdiction of the juvenile court is admissible and may be received in evidence. However, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300." (Italics added.) (2) (See fn. 6.), (1b) The parties agree this language makes a social study admissible for purposes of "providing the court with a coherent picture of the child's situation." (In re Rose G. (1976) 57 Cal. App.3d 406, 426 [129 Cal. Rptr. 338].)[6] They disagree, however, *376 whether the italicized language of the section's second sentence bars the juvenile court from relying on an otherwise admissible study when determining jurisdiction.
DSS maintains that although social studies are hearsay, they fall within exceptions to the rule excluding such evidence and are therefore admissible in a civil case. Because the studies are admissible in a civil case, DSS concludes they are competent in and of themselves to support a jurisdictional determination under section 300.
(3) DSS correctly observes that exceptions to the hearsay rule are not limited to those enumerated in the Evidence Code; they may also be found in other codes and decisional law. (In re George G. (1977) 68 Cal. App.3d 146, 155 [137 Cal. Rptr. 201]; see also Sen. Committee on Judiciary com., 29B West's Ann. Evid. Code (1966 ed.) § 1200, pp. 34-36.) (1c) DSS argues that section 281 and California Rules of Court, rule 1450(c)[7] (hereafter rule 1450(c)), adopt two such exceptions to the hearsay rule.
Section 281 states, "The probation officer shall upon order of any court in any matter involving the custody, status, or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The court is authorized to receive and consider the reports and recommendations of the probation officer in determining any such matter." (Italics added.)
Rule 1450(c) reads, "A social worker's report that contains information relevant to the jurisdiction hearing shall be admissible if, on request of the parent or guardian, the probation officer or social worker is made available to be cross-examined regarding the contents of the report."
The difficulty in interpreting the foregoing provisions is that neither explicitly creates an exception to the hearsay rule. Accordingly, we must construe those provisions to determine whether they implicitly create hearsay *377 exceptions for social studies. (See Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735 [248 Cal. Rptr. 115, 755 P.2d 299].)
We faced a somewhat similar problem in Daniels v. Department of Motor Vehicles (1983) 33 Cal.3d 532 [189 Cal. Rptr. 512, 658 P.2d 1313] (hereafter Daniels). There we considered whether an accident report filed by a private individual pursuant to Vehicle Code section 16000 was sufficient to support the suspension of another person's driver's license in a formal Department of Motor Vehicles (DMV) hearing. The DMV argued Vehicle Code section 14112 (stating that at formal hearings the DMV "shall consider its official records") demonstrated legislative intent to allow the DMV to rely on hearsay accident reports. We rejected this argument, holding that although the section allowed the DMV to consider its official records, it did not provide authority for the DMV to rely on hearsay in accident reports as the sole basis for a license suspension. (33 Cal.3d at p. 538.)
In reaching this holding, we first noted that other statutory schemes authorizing admission of hearsay evidence in administrative hearings do so unequivocally. (33 Cal.3d at p. 538, fn. 4 [citing as examples Lab. Code, §§ 5703, 5708 & 5709].) We then observed that unlike traditionally recognized hearsay exceptions, the accident report did not reflect the competency, reliability and trustworthiness necessary to exempt it from the hearsay rule. We stressed that even though the DMV relies on such reports as "official records," this reliance does not guarantee trustworthiness in their preparation. (33 Cal.3d at p. 539.) The fact that the specific accident report at issue was incomplete in crucial respects simply underscored its lack of reliability. (Ibid.)
Unlike a report filed by one of the drivers involved in an accident, the social studies at issue here are prepared by disinterested parties in the regular course of their professional duties. These elements of objectivity and expertise lend them a degree of reliability and trustworthiness not present in Daniels.[8] Moreover, in comparison to Vehicle Code section 14108, the language of section 281 provides greater indication of legislative intent both to admit the relevant report and to allow a court to rely on it in reaching a decision. Whereas Vehicle Code section 14108 provides that the DMV "shall consider its official records," section 281 states that "[t]he court is authorized to receive and consider the reports and recommendations of the probation officer in determining any such matter." (Italics added.) The italicized words imply that the social studies are not merely to be used as *378 background consideration (see In re Rose G., supra, 57 Cal. App.3d at p. 426), but may form the basis of the jurisdictional determination itself.
A further distinction between Daniels, supra, 33 Cal.3d 532, and the present case is that the suspended driver in Daniels was not given an opportunity to cross-examine the preparer of the report. In contrast, rule 1450(c) specifically provides that a social study is admissible only if, on request of the parent or guardian, the social worker is made available for cross-examination. (As explained below, due process may compel a similar result.) This procedural protection supports a probable legislative intent to allow greater reliance on social studies than on the accident reports in Daniels.
The present case is also distinguishable from Conservatorship of Manton (1985) 39 Cal.3d 645 [217 Cal. Rptr. 253, 703 P.2d 1147]. There the appellant had been involuntarily committed to a state mental institution, following a jury finding that he was gravely disabled. (See § 5000 et seq.) We reversed the conservatorship judgment on the ground that the trial court erred in admitting a conservatorship investigation report containing hearsay. (39 Cal.3d at pp. 652-653.)
Similar to section 281, section 5354 directs a county officer to investigate available alternatives to conservatorship and provides that a court "may receive the report in evidence and may read and consider the contents thereof in rendering its judgment." In holding that this section does not create a general hearsay exception, we first looked to the overall statutory scheme of conservatorship proceedings. We observed that section 5354 requires submission of the conservatorship report prior to the hearing to determine whether the proposed conservatee is gravely disabled. (Conservatorship of Manton, supra, 39 Cal.3d at p. 650, citing §§ 5008, subd. (h), 5350.) Although the conservatee may demand a trial after the hearing, we noted section 5354 fails to mention that the report may be used at a subsequent contested trial. We reasoned: "If the report were admissible at both the initial hearing and a subsequent court trial, the two proceedings would be essentially identical in terms of the acceptable range of evidence to be considered." (39 Cal.3d at p. 651.)[9] In order to avoid such redundancy, we construed legislative intent as allowing the reports to be admissible only at the hearing. (Ibid.)
Unlike section 5354, section 281 is quite broad. As noted above, section 281 requires a probation officer to file a written report "in any matter *379 involving the custody, status or welfare of a minor," and the court is authorized to receive and consider the reports "in determining any such matter." (Italics added.) Moreover, the Legislature specifically contemplated that social studies would be made available at section 300 dependency proceedings. (See, e.g., § 328 [probation officer shall include substance of interview with minor in any report submitted at an adjudicatory hearing].) Thus, neither the specific language of section 281 nor the statutory scheme of dependency proceedings as a whole evidences a legislative intent to limit a court's consideration of social studies in making a section 300 jurisdictional determination.
A further indicium of legislative intent to create a hearsay exception for social studies, and thereby render such reports competent to support a determination of jurisdiction, may be gleaned from a similar provision in Civil Code section 233. That section requires a specified county official to provide a report for use in proceedings to terminate parental custody rights. Subdivision (d) of that section further mandates that "The court shall receive the report in evidence and shall read and consider the contents thereof in rendering its judgment." Because the reports must include, inter alia, a statement of the minor's feelings and thoughts concerning the pending action (Civ. Code, § 233, subd. (b)), these reports necessarily contain hearsay and even multiple hearsay. (4) Nevertheless, the Court of Appeal has consistently held that as long as a meaningful opportunity to cross-examine and controvert the contents of the report is afforded, such reports constitute competent evidence upon which a court may base its findings. (See, e.g., In re Nalani C. (1988) 199 Cal. App.3d 1017, 1022-1025 [245 Cal. Rptr. 264]; In re Gary U. (1982) 136 Cal. App.3d 494, 500-501 [186 Cal. Rptr. 316]; In re Robert J. (1982) 129 Cal. App.3d 894, 901-902 [181 Cal. Rptr. 188]; In re Heidi T. (1978) 87 Cal. App.3d 864, 875 [151 Cal. Rptr. 263]; In re Marcos S. (1977) 73 Cal. App.3d 768, 781-782 [140 Cal. Rptr. 912]; see also Conservatorship of Manton, supra, 39 Cal.3d 645, 652 [dictum that Civ. Code, § 233 provides an express exception to the hearsay rule].)
(1d) The similarity between the language of Civil Code section 233 and section 281 suggests the Legislature likewise intended social studies to serve as competent evidence to support a jurisdictional determination. This intent seems all the more probable considering the higher standard of proof required to support a termination of parental custody. (See Civ. Code, § 232, subd. (c) [findings must be supported by clear and convincing proof].)
The history of sections 281 and 355 reinforces the view that the Legislature intended social studies to constitute competent evidence. In 1948 the Court of Appeal in In re Halamuda (1948) 85 Cal. App.2d 219, 223 [192 *380 P.2d 781] interpreted former sections 639 and 640[10] as creating a hearsay exception for probation reports. After examining the public records exception to the hearsay rule (former Code Civ. Proc., § 1918, subd. 6), the court concluded, "we have no hesitancy in holding that when the unverified report of the probation officer was filed it became a judicial record that the juvenile court judge should consider in deciding [a wardship] case. As the judgment recites that it was so considered, its contents must be regarded as legal evidence." (85 Cal. App.2d at p. 223.) One year after the In re Halamuda decision, the Legislature added section 638.1. That section stated, with little modification, the rule currently embodied in section 281. Subsequent to the enactment of section 638.1, the courts reaffirmed Halamuda's holding that a court "not only ha[s] the right but the duty to consider [the probation officer's report] in deciding [a section 701][[11]] case." (In re Garcia (1962) 201 Cal. App.2d 662, 665 [20 Cal. Rptr. 313]; see also In re Harrison (1963) 215 Cal. App.2d 723, 727-728 [30 Cal. Rptr. 473]; In re Biggs, supra, 17 Cal. App.3d at pp. 343-345; 27 Ops.Cal.Atty.Gen. 292, 295 (1956).)[12]
Shortly after the Biggs decision, the Legislature amended section 701 by increasing the standard of proof necessary to support a wardship determination from "a preponderance of evidence," to "proof beyond a reasonable doubt supported by evidence." (Stats. 1971, ch. 934, § 1, p. 1833.) The Legislature did not, however, at the same time amend the rule established in In re Halamuda, supra, and followed by subsequent courts that social studies constitute competent evidence. In so amending section 701  and specifically changing the standard of proof necessary to establish jurisdiction  the Legislature may be deemed to have acquiesced in judicial interpretations that it failed to alter. (5) "It is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction." (Marina Point, Ltd. v. *381 Wolfson (1982) 30 Cal.3d 721, 734-735 [180 Cal. Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) Thus, when the Legislature later added section 355 without substantive change, it presumably intended that social studies would continue to serve as competent evidence.
The Court of Appeal in In re Donald R., supra, 195 Cal. App.3d at pages 709-712, agreed that section 281 authorizes an exception to the hearsay rule for social studies. Nevertheless, it went on to rule "section 355 requires that a finding of dependency must be based upon evidence legally admissible under the Evidence Code in the trials of ordinary civil cases, other than dependencies." (195 Cal. App.3d at p. 715, italics added.) The court reached this conclusion by comparing the first and second sentences of section 355: whereas the first sentence makes admissible all "relevant and material" information, the second requires proof that is "legally admissible in the trial of civil cases." Although dependency proceedings are a form of civil case, the court believed the latter language "was unnecessary to tell a juvenile court it could consider ... evidence made admissible by the statute itself." (195 Cal. App.3d at p. 715.) According to the Donald R. court, including dependency cases within the definition of "civil cases" would render the latter sentence mere surplusage. (Ibid.) Thus, the court concluded a social study cannot support a finding of jurisdiction.
(6) We agree that the Legislature intended section 355 to create two standards: one governing admissibility and another establishing the level of proof sufficient to support a jurisdictional determination. But the two standards of section 355 should not be regarded as entirely distinct. They arise in the context of two consecutive sentences within a single code section. Moreover, the language of the second sentence indicates that it was intended to restrict the sentence immediately preceding it: "However, proof by a preponderance of evidence...." (§ 355, italics added.)
Construing section 355 as a whole, it is reasonable to view the standard of proof (i.e., "a preponderance of evidence legally admissible in the trial of civil cases") solely as a limitation on the liberal admissibility standard contained in the sentence preceding it. Thus, the second sentence of section 355 prohibits a court from basing its decision on evidence that would not have been admissible independent of the broad admissibility standard contained in the first sentence. Contrary to the view expressed in In re Donald R., supra, 195 Cal. App.3d 703, this general limitation does not render evidence incompetent simply because it is exempted from the hearsay rule by the Welfare and Institutions Code, rather than some other civil statute. Neither that court nor the dissent herein has cited any case suggesting that a hearsay exception is somehow less worthy because it is specific to a certain type of case, "nontraditional," or contained outside the Evidence Code. Indeed, *382 even those exceptions contained in the Evidence Code are often quite "specialized." (See Evid. Code, § 1226 [hearsay exception for statement of minor child in parent's action for child's injury]; id., § 1227 [hearsay exception for statement of declarant in action for his wrongful death].) (7) (See fn. 13.), (1e) Because social studies are made admissible by section 281, we conclude they meet the standard of proof required by section 355, and constitute competent evidence.[13]
In so construing section 355, it is possible to reconcile the apparent difficulties noted in Donald R., without resorting to inserting words that find no basis in legislative intent. (See Kirkwood v. Bank of America (1954) 43 Cal.2d 333, 341 [273 P.2d 532].) Such an interpretation does not render the words "civil cases" mere surplusage, for that language still excludes much evidence not contained in social studies. At the same time, the above interpretation gives effect to the apparent legislative intent to allow courts to rely on social studies.[14]

III. DUE PROCESS
(8a) In Long v. Long, supra, 251 Cal. App.2d 732, the Court of Appeal announced that in order for a social study to be admissible under section 582 (the predecessor to section 281), due process requires that "each party (a) receive a copy of the report, (b) be given an opportunity to cross-examine the investigative officer and to subpoena and examine persons whose hearsay statements are contained in the report, and (c) be permitted to introduce evidence by way of rebuttal." (251 Cal. App.2d at p. 736, italics added.) Russell maintains that because of the time constraints inherent in juvenile dependency proceedings,[15] the opportunity to call witnesses mentioned *383 in the report affords due process on "an abstract level" only. According to Russell, "The parent is left with the unenviable task of immediately searching out and obtaining statements from the persons mentioned in the report and then attempting to subpoena those persons in time for trial." (9) (See fn. 16.) In a related argument, Russell asserts a court's reliance on hearsay statements contained in the social study denies him the right to confront and cross-examine adverse witnesses.[16]
(10) Although the state and federal Constitutions differ somewhat in determining when due process rights are triggered, once it has been concluded that a due process right exists[17] we balance similar factors under both approaches to decide what process is due. (In re Jackson (1987) 43 Cal.3d 501, 510-511 [233 Cal. Rptr. 911, 731 P.2d 36].) This flexible balancing standard considers "`(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, (3) the [dignity] interest in informing individuals of the nature, grounds and consequences of the action and in enabling them to present their side of the story before a responsible governmental official, and (4) the governmental interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" (Id. at p. 511 [quoting People v. Ramirez (1979) 25 Cal.3d 260, 269 (158 Cal. Rptr. 316, 599 P.2d 622)].)
(8b) Applying these considerations to the issue before us, we conclude that the approach taken by Long v. Long, supra, 251 Cal. App.2d at page 736, is reasonable and that due process does not require that the county, rather than the parent, call all witnesses mentioned in the social study.[18]
It is true that a parent has substantial private interests at stake in a section 300 proceeding. Although parental rights cannot be finally terminated *384 unless further proceedings are undertaken pursuant to Civil Code section 232, a parent can lose custody if the section 300 petition is sustained. (§ 361, subd. (a); Lois R. v. Superior Court (1971) 19 Cal. App.3d 895, 901 [97 Cal. Rptr. 158].) Similarly, parents have significant dignity interests in being fully and fairly able to present their sides.
Placing upon the parent the burden to subpoena those witnesses quoted in the social study, however, poses little risk of an erroneous deprivation of the parent's custodial rights. Admittedly, section 300 jurisdictional hearings proceed at a rapid pace.[19] Moreover, the court is indeed constrained in its ability to grant continuances: a continuance may not be contrary to the interests of the minor (§ 352, subd. (a)) and shall be granted only on a showing of good cause and for the period of time proven necessary (id., subd. (b)). Nonetheless, although Russell's task may be "unenviable," it is not so burdensome as to amount to a due process violation.
Juvenile courts do not deny parents the right to cross-examine adverse witnesses (see Fewel v. Fewel (1943) 23 Cal.2d 431, 433 [144 P.2d 592]; Long v. Long, supra, 251 Cal. App.2d at p. 736); indeed, parents may employ the court's subpoena power to compel the presence of witnesses mentioned in a social study (§ 341). Moreover, Russell has not demonstrated that compliance with the subpoena requirements would significantly prejudice a parent's ability to present his or her case, or that a court would refuse to grant a good cause continuance if such prejudice were shown. Where, as here, hearsay declarations bear indicia of trustworthiness and reliability, the Legislature may certainly empower the courts to accord such evidence probative weight.
Finally, balanced against any possible hardship to the parent weighs the state's legitimate interest in providing an expedited proceeding to resolve the child's status without further delay. (11) As the court explained in In re Mary S. (1986) 186 Cal. App.3d 414, 418-419 [230 Cal. Rptr. 726], "Dependency proceedings are civil in nature, designed not to prosecute a parent, but to protect the child. A parent at a dependency hearing cannot assert the Fourth Amendment exclusionary rule, since `the potential harm to children in allowing them to remain in an unhealthy environment outweighs any deterrent effect which would result from suppressing evidence' unlawfully seized. Nor can the parent seek reversal on the grounds of incompetency of counsel. These decisions recognize the paramount concern is the child's welfare. The same principle applies to the father's claimed *385 violation of his right to confront witnesses." (Fn. and citations omitted.) Requiring the state to call every witness mentioned in the social study, including those witnesses whose testimony is undisputed, would needlessly prolong the jurisdictional hearing.[20]
(8c) An examination of the facts before us illustrates this last point and also reveals that Russell was afforded due process in this case. The trial court specifically informed Russell of his right to call witnesses mentioned in the study, but Russell's counsel responded, "I don't intend to call witnesses against my client." Russell was also granted an opportunity to continue the jurisdictional hearing in order to review the supplemental reports. Russell's counsel, however, similarly chose to proceed with the hearing.[21] This record does not reveal that Russell was prejudiced by being required to subpoena the four nontestifying witnesses mentioned in the social study in order to examine those witnesses.

CONCLUSION
(1f) We conclude social studies are both admissible and competent evidence on which to base a finding of jurisdiction pursuant to section 300.[22] Accordingly, we affirm the decision of the Court of Appeal.
Panelli, J., Eagleson, J., Kennard, J., and Arabian, J., concurred.
BROUSSARD, J.
I respectfully dissent.
In its introductory sentence, the majority opinion poses the issue before us as "whether a juvenile court may rely on `social studies' prepared by a social worker when determining whether a minor falls within its jurisdiction under Welfare and Institutions Code section 300, subdivision (d)." (Maj. opn., ante, pp. 372-373, italics added, fns. omitted.) The opinion, however, goes on to hold not simply that a juvenile court may properly rely on a social study or probation report in determining whether a child is a dependent *386 child for purposes of Welfare and Institutions Code section 300,[1] but rather that a juvenile court may rely solely on such a study or report in making its dependency determination, even if the report consists entirely of hearsay or multiple hearsay statements that would not ordinarily be admissible in the trial of a civil case, and even if there is no other evidence that would ordinarily be admissible in the trial of a civil case that supports the finding of dependency.
In my view, the majority's conclusion is inconsistent with the language and legislative history of section 355. I agree with the majority that under section 355 a social study or probation report is admissible at a dependency hearing and may be considered by the juvenile court in making its dependency determination. The provision's terms and background make it clear, however, that while the Legislature intended to permit the juvenile court to consider such material in making its determination, it also intended to require that a finding of dependency be supported by sufficient evidence, of a type traditionally admissible in the trial of a civil case, to ensure that the dependency determination meets a minimum level of reliability. In my view, the majority fails to follow this legislative mandate in concluding that a dependency determination may be based solely on a probation report or social study even if the report or study consists entirely of statements that would not ordinarily be admissible in a civil trial.

I
I agree with the majority opinion that the question whether a juvenile court may base its determination of dependency solely on the contents of a social study or probation report turns on the proper interpretation of section 355.[2] Section 355 provides in relevant part: "At the jurisdictional *387 hearing, the court shall first consider only the question whether the minor is a person described by Section 300, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him or her within the jurisdiction of the juvenile court is admissible and may be received in evidence. However, proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300. ..." (Italics added.)
*388 Although the procedural structure created by section 355  combining a relaxed rule of admissibiity of evidence with a requirement that the tribunal's ultimate finding or determination be supported by evidence that meets the more traditional standards of admissibility  is somewhat unusual, it is by no means unique. Indeed, while the majority opinion does not advert to the fact, the provisions of section 355 are closely analogous to the provisions of one of the basic sections of the California Administrative Procedure Act, Government Code section 11513, subdivision (c). That section, which applies generally to all administrative hearings governed by the Administrative Procedure Act, provides in relevant part: "The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of their serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. ..." (Italics added.) This statutory provision was enacted in 1945 and codified a line of earlier California decisions. (See, e.g., Walker v. City of San Gabriel (1942) 20 Cal.2d 879, 881-882 [129 P.2d 349, 142 A.L.R. 1383]; Steen v. Board of Civil Service Commrs. (1945) 26 Cal.2d 716, 726-727 [160 P.2d 816].)
The reasons that led the Legislature to adopt this type of procedural framework for dependency proceedings are clearly illuminated by the legislative history of section 355. The applicable language of section 355 is derived directly from section 701, which was initially enacted in 1961 as part of a comprehensive revision of the juvenile court law.[3] The 1961 legislation was in large measure the culmination of the work of a Special Study Commission on Juvenile Justice that was appointed by the Governor in 1958 to survey the entire juvenile justice system and to submit appropriate recommendations for changes. In 1960, the commission submitted a lengthy report and a set of recommendations for a comprehensive overhaul of the *389 juvenile justice system. The procedural framework established by section 701, now embodied in section 355, was one part of the commission's recommendations.
In explaining the rationale for the proposed procedural structure, the commission report observed: "A characteristic of California's juvenile courts is the pronounced absence of uniformity of court procedures. This is a natural consequence of the extremely vague procedural references in the present law.... [¶] The problem in attempting to establish acceptable juvenile court procedures is to attain a working balance between two essential objectives  first, preserving the guarantee of due process to the minor; and second, establishing an informal court atmosphere so that potentially harmful effects of the proceedings are minimized and the minor's receptivity to treatment is encouraged. [¶] The Commission believes that these objectives can be attained by applying rules of evidence routinely observed in the trial of any other cause in a court of law with one important modification, that such rules are to be applied only to test sufficiency of evidence and not to be applied as rules of admissibility. Thus, any matter relevant and material to the past or present conduct, welfare, or care of the minor, and any matter material and relevant to the acts or circumstances which are alleged to bring him within the court's jurisdiction, should be received in evidence. However, competent evidence, not subject to timely objection by competent counsel, must be adduced to support a finding of wardship. [¶] All of the reasons for employing rules of evidence in other judicial proceedings, e.g., to insure truthful, reliable, and fair testimony, apply with equal force to a hearing on a minor's delinquency or a hearing in which a child may be removed from his family because of parental neglect." (Rep. of the Governor's Special Study Com. on Juvenile Justice, pt. I (1960) pp. 29-30, original italics.)
As the report's comments demonstrate, the objective of section 355's procedural structure is two-fold. First, the procedure is intended to permit the juvenile court to consider any matter that might be material to the dependency issue, without regard to the matter's admissibility in an ordinary judicial action, in order to assure that the court has access to all information that might bear on the welfare of the child. Second, the procedure is intended to preserve to the affected child and parents a measure of the traditional protection of reliability and fairness provided by the ordinary rules of evidence. The procedure attempts to achieve this second objective by requiring that a finding of dependency be supported by sufficient evidence of the type traditionally admissible in a judicial action.
In light of the language and purpose of section 355, I agree with the majority that a probation report or social study is admissible in a dependency *390 proceeding and may be fully considered by the juvenile court in making its dependency determination.[4] I cannot agree, however, with the majority's further conclusion that a probation report or social study, even if it consists entirely of hearsay, multiple hearsay or other material that would not be ordinarily admissible in a civil trial, is sufficient, in itself, to support a finding of dependency. That conclusion, in my view, is irreconciliable with the requirement of section 355 that a finding of dependency be supported by "proof by a preponderance of evidence, legally admissible in the trial of civil cases...."

II
In arriving at a contrary view, the majority reasons that, in light of the provisions of section 281, a probation report or social study, even if based entirely on hearsay or other inadmissible evidence, should properly be considered evidence that is "legally admissible in the trial of civil cases" within the meaning of section 355.[5] With all respect, I cannot agree that this interpretation is faithful to the language or purpose of section 355.
*391 By its terms, section 281 does not establish that a probation report or social study is, as a general matter, legally admissible evidence in the trial of ordinary civil cases in this state. Section 281 provides in full: "The probation officer shall upon order of any court in any matter involving the custody, status, or welfare of a minor or minors, make an investigation of appropriate facts and circumstances and prepare and file with the court written reports and written recommendations in reference to such matters. The court is authorized to receive and consider the reports and recommendations of the probation officer in determining any such matter." (Italics added.)
Although the language of section 281 makes it clear that a court may "receive and consider" a probation report or social study in those cases involving the custody, status or welfare of a minor in which the court requests such a report or study, the section does not purport to provide that such a report or study is sufficient in itself to support a dependency determination or that such a report or study is, in general, legally admissible in ordinary civil cases without regard to the traditional rules of evidence.
It is true, of course, that many of the judicial actions to which section 281 refers  i.e., "matters involving the custody, status or welfare of a minor or minors"  are "civil cases," and thus, by virtue of section 281, a probation report or social study is "legally admissible" in some civil cases. But in light of both the language and history of section 355, it is clear, in my view, that this is not what the Legislature had in mind when it referred to the category of "evidence legally admissible in the trial of civil cases" in section 355.
To begin with, a reading of section 355 as a whole establishes beyond question that the Legislature did not intend the reference in section 355 to "legally admissible" evidence to be satisfied whenever the evidence in question was admissible in some type of civil action. Because section 355 itself authorizes the admission of any evidence in a dependency proceeding, and because a dependency proceeding is itself a "civil case," such an interpretation would effectively read the clause requiring proof by a preponderance of "legally admissible" evidence out of the statute altogether.
The majority opinion acknowledges that evidence that is admissible only by virtue of the relaxed admissibility standard of section 355 should not be considered "legally admissible" evidence for purposes of the provision's limitation. The majority suggests, however, that because a probation report or social study is rendered admissible by some statute other than section 355, such a report or study should be considered evidence that is "legally admissible in the trial of civil cases" for purposes of section 355 even though such material may properly be admitted and considered in only a discrete set of civil cases.
*392 In my view, the legislative history reviewed above demonstrates that the majority's suggested interpretation is not faithful to the legislative intent underlying section 355. As we have seen, in proposing the adoption of this procedural framework in 1960, the Governor's Special Study Commission on Juvenile Justice explained that it believed that an acceptable balance between establishing an informal court atmosphere and preserving the essential guaranties of due process could be attained "by applying rules of evidence routinely observed in the trial of any other cause in a court of law with one important modification, that such rules are to be applied only to test sufficiency of evidence and not to be applied as rules of admissibility.... [¶] All of the reasons for employing rules of evidence in other judicial proceedings, e.g., to insure truthful, reliable, and fair testimony, apply with equal force to... a hearing in which a child may be removed from his family because of parental neglect." (Rep. of the Governor's Special Study Com. on Juvenile Justice, pt. I, supra, at p. 30, italics added and omitted.)
As this language suggests, the reference in section 355 to evidence that is "legally admissible in the trial of civil cases" was intended to refer to evidence that is routinely admissible in the trial of any civil case, not to the kind of specialized rule of admissibility embodied in section 281. Given the purpose of section 355 to combine a very liberal rule of admissibility of evidence with a requirement that there be sufficient evidence of a type traditionally admissible in a civil case to support a finding of dependency, the fact that the Legislature, in section 281, has chosen to permit a trial court to elicit the aid of the probation officer or social service department in investigating the circumstances of a child whose custody or welfare is at issue and has authorized the court "to receive and consider" a report or social study prepared by those authorities, does not mean that such a report or study, in itself, is sufficiently reliable to constitute the sole basis for a dependency determination. (Accord Daniels v. Department of Motor Vehicles (1983) 33 Cal.3d 532 [189 Cal. Rptr. 512, 658 P.2d 1313] [although specific statute authorized the Department of Motor Vehicles (DMV) to "consider its official records" at formal hearings, under Gov. Code, § 11513, subd. (c), DMV still could not rely on hearsay in accident report as sole basis for a license suspension].) Indeed, the majority's holding in this regard appears particularly anomalous because it apparently permits a court to rely solely on inadmissible hearsay or multiple hearsay statements if such statements are contained in a report or study prepared by a probation officer or social worker, even though the court could not rely solely on such statements if they were introduced through the direct testimony of the probation officer, social worker or some other expert witness. (Cf. In re Cheryl H., supra, 153 Cal. App.3d 1098, 1118-1125, 1132-1133 [testimony of examining child psychiatrist that did not fall within hearsay exception *393 could not be considered in determining whether there was sufficient legally admissible evidence to support dependency finding].)
Finally, it is perhaps worth noting that while section 355 makes it clear that a social service department may not rely solely on a probation report or social study to support a dependency petition but must introduce some traditionally admissible evidence to support such a petition, the Legislature has enacted a number of additional provisions to lighten the potential burden on both the department and the affected child in a dependency proceeding. Section 355.1, for example, provides that where the juvenile court finds, "based upon competent professional evidence," that the child has sustained an injury that would ordinarily not be sustained except as the result of the unreasonable or neglectful acts of the person who has the care or custody of the minor, that evidence constitutes "prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300," shifting the burden of producing evidence on the issue to the child's custodian. In this case, the department could have triggered the operation of section 355.1 simply by having the doctor who examined the child present "competent professional evidence" of her findings. Furthermore, section 350, subdivision (b) expressly authorizes a juvenile court in a dependency proceeding to permit a child to testify in chambers and outside the presence of the child's parent or parents if the court finds either that the child is afraid to testify in front of his parent, that the child is likely to be intimidated by a formal courtroom setting, or simply that such testimony in chambers is necessary to ensure truthful testimony. Here, "legally admissible evidence" from the child could have been adduced outside the presence of her father under the aegis of this section.

III
As the statement of facts in the majority opinion reveals, in this case the department of social services did not rely solely on its social study but also introduced the testimony of the child's mother, who presented some legally admissible evidence in support of a finding of dependency. In making its dependency determination, however, the trial court referred only to the contents of the social study and provided no indication that it was aware that the study was not "legally admissible evidence" for purposes of section 355's standard-of-proof requirement.
As I have explained, while I agree with the majority that the trial court did not err in admitting the social study into evidence and in considering the study in making its dependency determination, I cannot agree that the dependency determination may be sustained even if it was based solely on inadmissible hearsay statements contained in the study.
*394 Accordingly, I would reverse the judgment of the Court of Appeal with directions to remand the matter to the trial court for reconsideration in light of the appropriate interpretation of section 355.
Mosk, J., concurred.
NOTES
[1] Social studies are written reports furnished by probation officers upon court order in any matter involving the custody, status, or welfare of a minor. (Welf. & Inst. Code, § 281.) The reports must include the probation officer's investigation of appropriate facts and a recommendation to the court. (Ibid.) As in the present case, the board of supervisors may delegate to the county welfare department the duty of the probation officer to prepare such reports. (Id., § 272.) For purposes of this opinion, "social study" and "probation officer's report" are used interchangeably. (See Cal. Rules of Court, rule 1401(a)(12), (14).)
[2] Unless otherwise noted all further statutory references are to the Welfare and Institutions Code.
[3] At the time of the jurisdictional hearings, section 300, subdivision (d) (hereafter section 300(d)), provided that the juvenile court may exercise jurisdiction over a minor "[w]hose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."
[4] A proceeding to declare a minor a dependent child commences with a petition filed by a probation officer or the county welfare department. (§ 325.) Once the court determines that a minor falls within its jurisdiction under section 300, it may then limit the control exercised over the dependent child by any parent or guardian. (§ 361.)
[5] The first hearing took place on November 5, 1987, and was continued until November 24, 1987, in order to allow the parties an opportunity to present additional evidence.
[6] In re Gladys R. (1970) 1 Cal.3d 855 [83 Cal. Rptr. 671, 464 P.2d 127] held that the juvenile court erred in reviewing the social study prior to determining the issue of jurisdiction. That case, however, involved an adjudication of delinquency pursuant to section 602, in which the commission of a crime is necessary to establish jurisdiction. To the extent the social study there concerned the minor's home environment and background, it was irrelevant and prejudicial. (1 Cal.3d at pp. 860-861.) In a section 300 proceeding, however, "the jurisdictional fact is the lack of parental control and the unfitness of the minor's home. The social study report is directly relevant to the issue to be determined by the juvenile court at the adjudication hearing." (In re Biggs (1971) 17 Cal. App.3d 337, 345 [94 Cal. Rptr. 519]; see also In re La Shonda B. (1979) 95 Cal. App.3d 593, 601 [157 Cal. Rptr. 280].) Accordingly, juvenile courts may review social studies prior to jurisdictional determinations under section 300.
[7] At the time of the jurisdictional hearings, rule 1450(c) was designated as rule 1365(d). Effective July 1, 1989, it was renumbered as section 1450(c) without substantive change.
[8] One court has remarked, "As we see it ... a significance attaches to these [probation] reports beyond the evidence of an ordinary witness. They are, of course, evidence, but they are more than that.... [T]he probation officer becomes, in a domestic relations proceeding, a special arm of the court to investigate the status of the children and report." (Swain v. Swain (1967) 250 Cal. App.2d 1, 8 [58 Cal. Rptr. 83].)
[9] Section 5358, subdivision (c), buttressed this conclusion. That section requires a court to consider available placement alternatives at the same time it considers the conservatorship report. We noted, however, that the issue of placement does not arise at a trial until after the conservatee is adjudged gravely disabled. (39 Cal.3d at p. 651.) Thus, we believed the Legislature intended courts to consider the reports only during the initial hearing.
[10] Former section 639 required a probation officer to "furnish to the court such information and assistance as the court may require"; former section 640 mandated the probation officer to "inquire into the antecedents, character, family history, and environment of every person brought before the court" and to provide a written report thereof to the court.
[11] Until 1976, wardship and dependency cases were controlled by the same set of statutes. In that year the Legislature divided the two proceedings "by nonsubstantive amendment" (Stats. 1976, ch. 1068, § 82, p. 4799) and in the process created sections 281, 300, and 355, among others. The language of section 355 derived from section 701. (See Stats. 1961, ch. 1616, § 2, pp. 3471, 3482.)
[12] Similarly, the Court of Appeal has also recognized section 281 as creating a hearsay exception in child custody proceedings. (See, e.g., Forslund v. Forslund (1964) 225 Cal. App.2d 476, 494-495 [37 Cal. Rptr. 489]; Dahl v. Dahl (1965) 237 Cal. App.2d 407, 412-413 [46 Cal. Rptr. 881]; Swain v. Swain, supra, 250 Cal. App.2d at p. 8; Long v. Long (1967) 251 Cal. App.2d 732, 736 [59 Cal. Rptr. 790]; but cf. In re Marriage of Russo (1971) 21 Cal. App.3d 72, 78-79 [98 Cal. Rptr. 501].)
[13] The fact that a social study is competent by itself to support a determination "does not, however, give to the court carte blanche to accept it in lieu of all other evidence. Nor does it leave the parties helpless to challenge the contents of the report." (Dahl v. Dahl, supra, 237 Cal. App.2d at p. 413.) In the present case, Russell does not question the social studies as lacking sufficient evidence to support the jurisdictional determination.
[14] The dissent suggests that this result "appears particularly anomalous" because it would allow a court to rely on hearsay statements contained in a social study, even though such statements would not be competent if they were introduced through the direct testimony of the social worker or other expert witness. (Dis. opn., post, p. 392.) Unlike direct testimony, however, a social study must be furnished to the parent prior to the jurisdictional hearing. (See post, fn. 21.) Consequently, the parent has an opportunity to prepare and investigate any challenge to the reliability or trustworthiness of specific statements contained in the social study. The possibility of unfair surprise from hearsay statements elicited during direct testimony, on the other hand, may well have provided the Legislature sufficient cause not to similarly exclude such statements from the hearsay rule.
[15] In order to minimize the disruptive effects of prolonged trial, juvenile courts must endeavor to promote a speedy resolution. (See, e.g., § 350 [requiring juvenile courts to control proceedings "with a view to the expeditious and effective ascertainment of the jurisdictional facts," italics added]; see generally, Edwards, The Relationship of Family and Juvenile Courts in Child Abuse Cases (1987) 27 Santa Clara L.Rev. 201, 213-216.)
[16] While both the federal and state Constitutions confine the express right of confrontation to criminal defendants (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15), parties in civil proceedings also have a due process right to cross-examine and confront witnesses. (See, e.g., Willner v. Committee on Character (1963) 373 U.S. 96 [10 L.Ed.2d 224, 83 S.Ct. 1175, 2 A.L.R.3d 1254]; McLaughlin v. Superior Court (1983) 140 Cal. App.3d 473, 481-482 [189 Cal. Rptr. 479].)
[17] Under either approach parents' due process rights are implicated here. (See, e.g., Santosky v. Kramer (1982) 455 U.S. 745, 753 [71 L.Ed.2d 599, 606, 102 S.Ct. 1388] [recognizing a fundamental liberty interest in matters of family life]; Doe v. Staples (6th Cir.1983) 706 F.2d 985, 988-989; Long v. Long, supra, 251 Cal. App.2d at p. 736.)
[18] This holding applies only to social studies presented in a section 300 jurisdictional hearing. We express no view whether a similar result would be reached in the context of sections 601 or 602.
[19] For instance, a court must hold a detention hearing "before the expiration of the next judicial day after a petition to declare the minor a dependent child has been filed." (§ 315.) If the child is so detained, the matter must be set for hearing within 15 judicial days of the detention order. (§ 334.)
[20] Indeed, it may sometimes be to the parents' advantage not to elicit live testimony. As one practitioner counsels, "Before demanding the right to confront and cross-examine the preparers of reports, counsel should consider that cross-examination may strengthen, not weaken the force of direct testimony, and that the risk is even greater when the cross-examination substitutes a live witness for a document." (5 Markey, Cal. Family Law Practice and Procedure (1989) § 82.16[3], p. 82-52.3.)
[21] We observe that a due process right to cross-examine witnesses mentioned in the social study would serve little purpose if the social studies were not made available to the interested parent a reasonable time before the jurisdictional hearing. Hence, the juvenile court acted properly in offering Russell a continuance.
[22] We disapprove In re Donald R., supra, 195 Cal. App.3d at pages 714-716, to the extent it is inconsistent with our holding here.
[1] Unless otherwise indicated, all further section references are to the Welfare and Institutions Code.
[2] The conclusion that the question is controlled by section 355 is, however, not as self-evident as may appear from the majority opinion. By its terms, section 701, as well as section 355, appears to govern the admissibility of evidence and the standard of proof applicable at the jurisdictional hearing of a dependency proceeding. And while section 701, like section 355, provides that "a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Section 300 ...," section 701, unlike section 355, appears to limit the admissibility of evidence in such a proceeding by providing that "[t]he admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision." At least one Court of Appeal decision has viewed section 701 as limiting the admissibility of evidence at a dependency hearing to evidence admissible under the Evidence Code. (See In re Cheryl H. (1984) 153 Cal. App.3d 1098, 1115 [200 Cal. Rptr. 789].)

From my review of the legislative history of sections 355 and 701, however, I agree with the majority opinion that section 355 should be viewed as the controlling statute in this context. Although the analysis of the relevant legislative history is somewhat lengthy, in view of the conflicting language of sections 355 and 701 it seems appropriate to explain why section 355 controls.
The confusion in the current statutory scheme dates to 1976, when two bills amending section 701 were enacted and signed into law on the same date. (See Stats. 1976, ch. 1068, § 48, p. 4789; Stats. 1976, ch. 1071, § 27, p. 4825.)
Chapter 1068 of the 1976 Statutes  the "Arnold-Kennick Juvenile Court Law" (see Stats. 1976, ch. 1068, § 1.5, p. 4741)  embodied an overall reform of the juvenile court law. As part of that general reform, chapter 1068 moved the statutory provisions dealing with dependency proceedings  proceedings that were formerly designated section 600 proceedings  to a new article beginning with section 300. In line with that revision, the act removed the newly designated section 300 cases from the ambit of section 701 (Stats. 1976, ch. 1068, § 48, p. 4789), and added a new section, section 355, to govern the admissibility of evidence and standard of proof at the jurisdictional phase of dependency proceedings. (Stats. 1976, ch. 1068, § 9, p. 4771.) As enacted, section 355 precisely tracked the language of the relevant portions of the pre-chapter-1068 version of section 701.
At the same time as it enacted chapter 1068 of the 1976 Statutes, the Legislature also adopted chapter 1071 of the 1976 Statutes, an omnibus bill that included, as one of its many varied provisions, a revision of the pre-chapter-1068 version of section 701. (See Stats. 1976, ch. 1071, § 27, p. 4825.) As amended and reenacted in chapter 1071, section 701 still referred to dependency cases by their former designation as section 600 cases but added the new language, referred to above, that provides that "[t]he admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision."
Because the version of section 701 contained in chapter 1071 of the 1976 Statutes referred to dependency cases by their old designation as section 600 cases, it is apparent that this section of the omnibus legislation was drafted without consideration of the overall changes in the treatment of dependency cases contemplated by chapter 1068 of the 1976 Statutes. And while section 701 was amended the following year to substitute section 300 for the section's outdated references to section 600 (see Stats. 1977, ch. 579, § 196, p. 1922), there is nothing in either the enactment of chapter 1071 in 1976 or in the 1977 amendment to suggest that the Legislature intended to repeal or modify the provisions of section 355 as that section applies to dependency proceedings. In 1987, the Legislature reenacted section 355 with only minor changes not relevant here.
From this chronology, I conclude that while the current provisions of both sections 355 and 701 purport to apply to the jurisdictional hearing of a dependency proceeding, the inclusion of dependency proceedings in the present version of section 701 is simply a product of legislative oversight, and cannot properly be found to have impliedly repealed the contrary and more specific provisions of section 355 that were intended to apply exclusively to dependency proceedings. Accordingly, I agree with the majority opinion that section 355 must properly be viewed as the section that controls the admissibility of evidence and the standard of proof at the jurisdictional phase of a dependency proceeding.
[3] As enacted in 1961, section 701 provided in relevant part: "At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, a preponderance of evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, and a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor is a person described by Sections 600 or 601." (Stats. 1961, ch. 1616, § 2, p. 3482, italics added.) As explained above (see ante, pp. 386-387, fn. 2), prior to 1976 the "dependent child" provisions currently found in section 300 were contained in section 600.
[4] Some confusion with respect to the court's authority to consider inadmissible evidence in making its dependency determination may have resulted from language in In re Donald R. (1987) 195 Cal. App.3d 703 [240 Cal. Rptr. 821], a decision that holds that a social study that consists entirely of inadmissible hearsay statements cannot in itself support a finding of dependency. In the course of its analysis, the Donald R. court stated: "[U]nless hearsay in a social study falls within an exception to the hearsay rule, the juvenile court must disregard it, and focus exclusively upon admissible evidence, in determining whether dependency has been proved by a preponderance of the evidence." (195 Cal. App.3d at p. 715, italics added.)

To the extent that this language suggests that the juvenile court, in making its dependency determination, must disregard all legally inadmissible evidence and may consider only legally admissible evidence, I cannot agree with that reading of the statute. In my view, section 355 permits a juvenile court to fully consider all of the evidence presented at the dependency hearing in determining whether the child should or should not be found to be a dependent child under section 300. Thus, even if a preponderance of the legally admissible evidence supports a finding of dependency, the juvenile court need not and should not assume jurisdiction over the child if the court is persuaded by the remaining, "legally inadmissible" evidence that the child is not a dependent child.
If the court is persuaded by all of the evidence before it that the child is subject to the court's jurisdiction under section 300, however, section 355 requires the court to make a further determination, namely, whether there is sufficient legally admissible evidence to support the finding of dependency. The fact that the court must make this further finding with respect to the legally admissible evidence, however, does not mean that it must disregard any of the material contained in a probation report or social study in making its dependency determination.
[5] Although the majority opinion also relies on rule 1450(c) of the California Rules of Court, for several reasons I do not believe it is necessary to address that rule separately. First, a judicially promulgated rule of court obviously cannot either expand or contract a statutorily based rule relating to the admissibility of evidence and cannot override a statutorily imposed requirement regarding the type of evidence necessary to support a statutorily prescribed finding. Second, because rule 1450(c) simply provides that a social worker's report is admissible in a dependency proceeding, it does not add anything to the provisions of section 281.