Filed 9/19/14  In re Victor G. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re VICTOR G., a Person Coming Under the Juvenile Court Law. | B251717 (Los Angeles County Super. Ct. No. CK97902) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. SALVADOR F., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steven R. Klaif, Juvenile Court Referee.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

Salvador F. (father) challenges the juvenile court's jurisdictional and dispositional findings and orders declaring his infant son, Victor G., a juvenile court dependent and removing him from his parents' custody. We conclude that substantial evidence supported the trial court's findings and orders, and thus we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Detention

Victor (born in Oct. 2012) came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) on January 27, 2013, when law enforcement was called to the family home because Victor's mother, Myra G. (mother), was behaving aggressively towards the maternal grandparents, with whom mother and Victor lived. Father did not live with mother and Victor. Mother denied any intent to harm the maternal grandparents, but admitted that she had used methamphetamines for many years. Mother claimed she had last used drugs a year earlier, in January 2012, and she denied any drug use while pregnant with Victor. Mother was not certain who Victor's father was, but identified two possible fathers: Alberto G. and father.

Mother tested positive for amphetamines and methamphetamines on February 6, 2013, and she later admitted using methamphetamines on February 14, 2013. On February 15, 2013, Victor was detained from mother and placed with the maternal grandparents. On February 21, 2013, the juvenile court found a prima facie case for detaining Victor and ordered him to remain with the maternal grandparents.

A report filed March 22, 2013, noted that there were two alleged fathers, both of whom agreed to take paternity tests. Mother said both alleged fathers used methamphetamines and that her relationship with each father "was about drugs." Mother agreed she had a significant substance abuse problem and needed inpatient drug treatment.

Mother did not appear for further drug testing in February, March, April, or May 2013. She said she was not drug testing because she was still using methamphetamines

2

and knew she would test positive.  Mother entered inpatient drug treatment April 24, 2013, but checked herself out of the program four days later.

On April 30, 2013, DCFS advised the court that DNA testing demonstrated that Victor was father's child.  Father contacted DCFS on May 7 and was provided with referrals, including for random drug testing.

## II.      Petition, Jurisdiction, and Disposition

### A.      Petition

DCFS filed a child dependency petition on February 21, 2013.  DCFS subsequently dismissed the petition and filed first, second, and third amended petitions. The operative third amended petition, filed August 6, 2013, alleged:  (b-2) Mother has an eight-year history of drug abuse and is a current abuser of amphetamines and methamphetamines, which render her incapable of providing regular care and supervision of Victor; on prior occasions in 2012 and 2013, mother was under the influence of illegal drugs while caring for Victor; (b-3) Mother and her companion, Alberto G., have a history of domestic violence, which endangers Victor's physical health and safety, creates a detrimental home environment, and places Victor at risk of harm; and (b-5) Father has a history of abusing methamphetamines and marijuana and of multiple arrests and convictions for drug possession; further, father is in violation of drug court conditions, which resulted in his deportation; father's illicit drug abuse renders him incapable of providing regular care for the child and endangers Victor's physical health and safety, creates a detrimental home environment, and places Victor at risk of harm.[1]

### B.      Evidence of Father's Drug Use and Arrests

According to reports provided to the court by the Covina Police Department, father was arrested on May 3, 2012, for possessing drug paraphernalia (specifically, a

---

[1]      Upon DCFS's recommendation, the juvenile court dismissed counts a-1, b-1, b-4, b-6, and g-1 of the third amended petition.  Because they are not relevant to any issue raised on appeal, we do not discuss them.

pipe commonly used to smoke methamphetamines); on August 10, 2012, for possessing marijuana; on October 2, 2012, for possessing methamphetamines; and on December 17, 2012, for possessing stolen property (a bank card). When father was arrested on December 17, police found a glass pipe in his bedroom, and father admitted smoking methamphetamines two or three weeks earlier.

In a letter dated July 22, 2013, New Beginnings, a substance abuse recovery center, reported that father had attended 10 individual counseling sessions, 10 substance abuse groups, and 10 relapse prevention groups, and had submitted six clean random drug tests.

Father was voluntarily deported to Mexico on July 22, 2013. Although he initially claimed otherwise, father ultimately admitted that he was deported in connection with his 2012 drug arrests. He explained that because he deported voluntarily, he was still eligible to apply for United States citizenship.

Maternal grandmother reported that before his deportation, father visited Victor approximately every other day and called on the days he did not visit. Since his deportation, he had called twice to check on Victor.

In a "Last Minute Information for the Court" filed August 7, 2013, DCFS provided additional information regarding father's criminal history. In connection with one arrest, father pled guilty on September 29, 2011. Entry of judgment initially was deferred, but after father failed to comply with a drug diversion program, he was convicted on March 19, 2012. In connection with another arrest, father was convicted on June 29, 2012, had his probation revoked on July 15, 2013, for failing to comply with the conditions of probation, and was ordered on July 17, 2013, to serve jail time.

### C.  Hearing and Order

On August 9, 2013, the juvenile court found by a preponderance of the evidence that counts b-2, b-3, and b-5 were true as amended and declared Victor a juvenile court

4

dependent pursuant to Welfare and Institutions Code section 300, subdivision (b).[2] With regard to count b-5, the court explained as follows: "This is a father that has got a long history, multiple arrests, violation of drug court conditions [and,] basically[,] the best I can figure is getting himself kicked out of the country mainly for the drug usage[.] [I]f [that] isn't showing an interference with the father's ability to care for the child, then I am not sure what is, and I am sustaining b[-5]."

The court also found pursuant to section 361, subdivision (c) that there would be a substantial danger to Victor's physical health and safety if he were returned home, and there were no reasonable means by which his health could be protected without removing him from his parents' custody. The court therefore ordered Victor removed and placed with the maternal grandparents. Father was ordered to participate in a drug and alcohol program, on-demand drug testing every other week, a 12-step program, and a parenting class, and was granted monitored visitation two to three times per week.

Father timely appealed.

## DISCUSSION

Father contends that the juvenile court erred in (1) sustaining count b-5 of the petition, which alleges that father's actions (specifically, his drug use, drug arrests, and deportation) bring Victor within section 300, subdivision (b), and (2) placing Victor outside father's care. For the reasons that follow, we conclude that substantial evidence supported the court's jurisdictional and dispositional findings and orders in their entirety, and thus we affirm.

## I.     Substantial Evidence Supported the Juvenile Court's Jurisdictional Findings

Father contends the juvenile court erred in sustaining count b-5 of the petition, which alleges that father's history of drug abuse, violation of drug court conditions, and

---

[2]     All subsequent statutory references are to the Welfare and Institutions Code.

5

deportation render him incapable of providing regular care for Victor, and place Victor at risk of harm. We review the juvenile court's jurisdictional findings and order for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.) Under this standard, "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 763 (*Drake M.*); *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)

We begin by noting that father does not suggest that the juvenile court erred in sustaining counts b-2 and b-3 of the petition, which allege that mother's drug use and domestic violence place Victor at risk of harm. To the contrary, father expressly "*does not contest* the court's jurisdictional finding with respect to mother." (Italics added.) It is well established that "a jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions *of either parent* bring [him] within one of the statutory definitions of a dependent. (*In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554; see 2 Cal. Juvenile Court Practice (Cont.Ed.Bar Supp. 1996) Initiating Dependency Proceedings, § 15.5, p. 13.) This accords with the purpose of a dependency proceeding, which is to protect the child, rather than prosecute the parent. (See, e.g., *In re Malinda S.* (1990) 51 Cal.3d 368, 384.)" (*In re Alysha S.* (1996) 51 Cal.App.4th 393, 397, italics added.) Thus, because father does not challenge the sufficiency of the evidence to support the jurisdictional allegations as to mother, the juvenile court would properly have exercised jurisdiction over Victor even if father's conduct was not an independent basis for jurisdiction. (See, e.g., *In re Maria R.* (2010) 185 Cal.App.4th 48, 60, disapproved on other grounds in *In re I.J.* (2013) 56 Cal.4th 766, 780-781.)

In any event, substantial evidence supported the trial court's jurisdictional findings as to father. Section 300, subdivision (b) provides that a child is within the jurisdiction of

the juvenile court if, among other things, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, *or substance abuse*." (Italics added.) The record before the juvenile court established that father was arrested three times in 2012 for possessing illegal drugs and drug paraphernalia: on May 3, 2012, for possessing drug paraphernalia (specifically, a pipe commonly used to smoke methamphetamines); on August 10, 2012, for possessing marijuana; and on October 2, 2012, for possessing methamphetamines. Further, when father was arrested in December 2012 for possessing stolen property, police found a glass pipe in his bedroom, and father admitted smoking methamphetamines two or three weeks earlier. The evidence of father's recent drug use, considered together with his history of frequent arrests and his deportation to Mexico, fully supports the juvenile court's finding that father's substance abuse endangered Victor's health and safety.

The courts' analyses in *Drake M.*, *supra*, 211 Cal.App.4th 754, and *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322 (*Jennifer A.*) do not compel a different conclusion. The *Drake M.* court noted that the dependency statutes do not define "substance abuse," and it proposed a definition of substance abuse based on the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) (DSM-IV-TR), a definition also used in *Jennifer A.* in connection with a related issue. (See *Drake M.*, *supra*, 211 Cal.App.4th at p. 765.) Following *Jennifer A.*, the *Drake M.* court held "a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM-IV-TR. The full definition of 'substance abuse' found in the DSM-IV-TR describes the condition as '[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by

7

one (or more) of the following, occurring within a 12-month period:  [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights).'  (DSM-IV-TR, at p. 199.)"  (*Drake M.*, *supra*, 211 Cal.App.4th at p. 766.)

The court continued:  "Although a finding of substance abuse is necessary under this prong of section 300, subdivision (b), it does not always follow that such a finding means that the parent or guardian at issue is unable to provide regular care resulting in a substantial risk of physical harm to the child.  The trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case.  That being said, '[c]ases finding a substantial physical danger tend to fall into two factual patterns.  One group involves an *identified, specific hazard* in the child's environment—typically an adult with a proven record of abusiveness.  [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety. [Citations.]'  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.)  And we also hold that, in cases involving the second group, the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm."  (*Drake M.*, *supra*, 211 Cal.App.4th at pp. 766-767; see also *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217-1220.)

In the present case, father unquestionably had "recurrent substance-related legal problems," as evidenced by his three drug arrests in 2012 and his deportation in 2013 for

8

failing to comply with the conditions of his probation. In addition, because Victor is an infant—a child of "tender years" in the language of *Drake M.*—the finding of substance abuse is prima facie evidence of father's inability to provide regular care resulting in substantial risk of harm. (*Drake M.*, *supra*, 211 Cal.App.4th at p. 767.) Father did not adequately rebut that evidence. Indeed, his failure to comply with the conditions of his probation, which led to his deportation to Mexico, confirm his poor judgment and willingness to endanger Victor. The court's jurisdictional finding as to count b-5 thus was supported by substantial evidence.[3]

## II.    Substantial Evidence Supported the Juvenile Court's Dispositional Findings

Father contends that the juvenile court's dispositional order—which he characterizes as "remov[ing] Victor from father's custody pursuant to section 361, subdivision (c)"—was not supported by substantial evidence. He urges that a removal order must be based on proof of the parent's inability to provide proper care for the child and of detriment to the child if he or she remains with the parent. In this case, he says, there was no substantial evidence that Victor was likely to suffer physical or emotional

---

[3]     *In re Destiny S.* (2012) 210 Cal.App.4th 999, cited by father, is distinguishable. Destiny was 11 years old, and although the mother's drug use was undisputed, "[t]here [was] no evidence . . . that Mother's drug use caused her to neglect Destiny." (*Id*. at p. 1004.) In contrast, Victor was just three months old when he was removed from his mother's care. Because of his very young age, Victor required nearly constant care and supervision, the provision of which is incompatible with the regular use of marijuana and methamphetamines.

*In re David M.*, *supra*, 134 Cal.App.4th 822, is also distinguishable. Although there was evidence in that case that the child's mother used marijuana on some occasions, mother's marijuana use had not led to arrests or other legal problems, nor had it impaired her ability to care for her child.

Father urges that there was no evidence that he had ever used or been under the influence of drugs in Victor's presence. While this is true, it is of limited relevance: Victor has never lived with father, and there is no evidence Victor spent any time with father prior to the initiation of these dependency proceedings. Indeed, prior to these proceedings, father did not know Victor was his child. Therefore, the fact that father had not used drugs around Victor in the past is not probative of his likely conduct in the future.

9

harm in father's care, and thus the juvenile court erred in removing Victor from his parents' custody.

As an initial matter, we agree with DCFS that father forfeited this issue by failing to raise it with the juvenile court. "'"An appellate court will ordinarily not consider procedural defects or erroneous rulings in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method." [Citation.]' (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98.) This is the general rule, because any other rule would allow a party to deliberately stand by in silence and permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1398.) In the present case, the juvenile court specifically asked father's counsel whether she had "[a]ny other evidence or argument regarding disposition," and counsel did not request that Victor be placed with father. The contention therefore is forfeited.

Further, father errs in suggesting that section 361, subdivision (c) governed the juvenile court's power to place Victor outside his care. Section 361, subdivision (c) authorizes a juvenile court to remove a dependent child "from the physical custody of his or her parents or guardian or guardians *with whom the child resides* at the time the petition was initiated." (Italics added.) Victor has never resided with father, and he was not doing so when the petition was initiated. Section 361, subdivision (c) therefore is irrelevant to the disposition as to father.[4]

---

[4] Had father wished to have Victor placed with him, he could have requested placement pursuant to section 361.2, subdivision (a), which provides that when a court orders removal of a child, it shall determine "whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." As we have said, father never advised the juvenile court that he desired custody of Victor, and thus the court's

10

Because Victor is an infant, "'the finding of substance abuse [by father] is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm.' (*Drake M.*, *supra*, 211 Cal.App.4th at p. 767; accord, *Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.)" (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219.) In addition, father had a recent arrest history, was not in compliance with the terms of his probation, and had been deported. Finally, father had never lived with Victor and did not have a relationship with him. Under these circumstances, the decision not to place Victor with father was supported by substantial evidence.

## DISPOSITION

The juvenile court's jurisdictional and dispositional findings and orders are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, J.[*]

We concur:

EPSTEIN, P. J.                    MANELLA, J.

---

failure to consider placing Victor in father's care manifestly was not an abuse of discretion.

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.