Filed 10/26/21  In re X.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re X.C. et al., Persons Coming Under the Juvenile Court Law. | C093459 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>W.C. et al.,<br><br>    Defendants and Appellants. | (Super. Ct. Nos. 20DP00146, 20DP00147) |

Appellants Ma.C. (father) and W.C. (mother), parents of minors M.C. and X.C., appeal from the juvenile court's jurisdictional and disposition orders, finding the minors come within the provisions of Welfare and Institutions Code section 300, subdivision (b), adjudging the minors dependents, and removing them from parental custody.  (Welf. &

1

Inst. Code, §§ 300, 361, 395.)[1]  The parents contend the evidence was insufficient to support jurisdiction and removal.  Mother, who is a member of the Fort Pecks Tribe of Montana, argues separately that the evidence is insufficient to support removal under the ICWA.  Father argues separately that the requirement he participate in substance abuse services and testing as part of his reunification case plan was an abuse of discretion.  We affirm the juvenile court's orders with respect to minor X.C. but reverse the jurisdiction orders with respect to minor M.C. and remand with directions to dismiss the petition filed on June 29, 2020.

## FACTUAL AND PROCEDURAL BACKGROUND

*Petitions and Initial Detention*

On June 29, 2020, Butte County Children's Services (Department) filed non-detaining section 300, subdivision (b)(1) petitions asserting juvenile dependency jurisdiction over two-week-old X.C. and eight-year-old M.C.  The petitions were based on a June 16, 2020, child welfare referral indicating mother had tested positive for methamphetamine during an ER visit during her pregnancy with X.C. on May 16, 2020.  At his birth approximately one month later, per the referral, X.C. had withdrawal symptoms and "tremors disturbed."  The baby was placed in a special care nursery at birth but the next day was returned to mother's room when his symptoms eased.  Urine toxicology tests for both X.C. and mother at birth were negative for drugs.  Mother was currently breastfeeding, and had informed the hospital that she did not know she was pregnant until mid-November.  When interviewed by the social worker, mother denied drug use and said she had been taking diet pills and anti-depressants while pregnant.  The social worker had smelled marijuana while visiting the family at their motel on June 25,

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

but was unable to tell from what room the smell was coming. When asked to drug test, mother declined.

The initial report indicated that a representative from the Boys and Girls Club reported concern to the social worker about M.C., although the report did not specify the basis for the concern. The representative also reported mother had indicated she was pregnant the September before X.C.'s (June) birth.

Specifically, the petition first alleged (b-1) that the parents did not have "adequate provisions to meet the basic needs" of the children and that the Department had been denied access to the children by the parents. The second allegation (b-2) was the drug-related conduct we have described immediately above and related only to the baby X.C. without elaborating on how the drug related conduct endangered M.C. The third allegation (b-3) provided that father "has drug related criminal history, which includes possession of paraphernalia, possession of narcotics, and related probation violations" and that he too had "failed to drug test on June 25, 2020, as requested."[2]

Regarding father's criminal history and past substance abuse, the Department reported that father had been arrested multiple times since 2007. In 2007, he was arrested for robbery and later convicted of grand theft, and in late 2009 his probation was terminated and he was sentenced to prison. He was convicted in March 2014 of possession of a controlled substance and evading a peace officer, and placed on probation. In August 2014, he was again convicted of possession of drugs and evading; his probation was revoked and he was sentenced to state prison.

---

[2] Because the portion of allegation b-1 regarding adequate provisions was later found untrue and stricken by the juvenile court, we do not discuss it (or the information in the reports proffered in support of that allegation) further.

The parents had three prior child welfare referrals (in 2016, 2017, and 2019); all three involved allegations of illegal drug use or sales by one or both parents but none resulted in intervention by the Department.

Mother was an enrolled member of the Fort Peck Tribes of Montana, and the juvenile court found that the ICWA applied.

At the initial appearance on the petition, the jurisdiction hearing was set for July 15, 2020; it was subsequently continued multiple times and finally held in September, as we discuss *post*.

On August 7, 2020, the Department filed a request for a protective custody order, alleging that two days before, at the August 5 appearance for the continued jurisdiction hearing, the parents were asked to drug test and declined. Mother had claimed she could not drug test at that time because she had to nurse X.C. The request added that the parents had otherwise declined to cooperate with the Department and that the Department had unsuccessfully attempted to contact the parents by telephone numerous times. A protective custody warrant was issued that same day.

A contested detention hearing was held on August 13, 2020. At the hearing, the social worker testified generally as outlined in the report. As relevant here, she clarified that mother would not voluntarily drug test without a court order in place, and at the time mother had been asked to test there was no order. The social worker added that she had heard from family members that father was addicted to methamphetamine, and that he too had refused to test in June. She confirmed that the only *new* concern about the family that had led to the warrant request was lack of contact with the family after the non-detaining petition was filed.

Mother testified that X.C. was never put in special care and was never apart from her after his birth in the hospital; she denied that he had withdrawal symptoms. She said she had not received any messages that social workers or CPS had called, and that she had been trying to contact CPS but had been unsuccessful.

4

After hearing argument from the attorneys, with the observation that: "[h]ad [the parents] cooperated, had there been drug testing and those tests were negative, I don't think we would be here today," the juvenile court detained the minors. At the August 19, 2020 hearing on jurisdiction, a contested hearing was set for September 17, 2020.

*Evidence at Jurisdiction*

The jurisdiction report was filed on September 8, 2020. As relevant here, the report indicated a witness from the hospital could testify to X.C.'s withdrawal symptoms and placement at birth in the special care nursery. The report added that since the removal of the minors pursuant to the warrant on August 10, the parents had refused to drug test, sign releases, or participate in services.

At the contested jurisdiction hearing held on September 17, 2020, the juvenile court accepted the petition and the two reports (filed June 29 and September 8) into evidence. The social worker testified about the positive drug test before X.C. was born and subsequent negative tests of mother and X.C. in a manner consistent with the petition and reports. She stated additional records were unavailable as mother had refused to sign releases and refused any further tests. She also testified about X.C.'s withdrawal symptoms and overnight stay in critical care from her memory of the hospital report. When asked about any concerns with M.C., she testified that at the Boys and Girls club he had "seemed hungry" and had not always come to the club regularly. Regarding X.C., she indicated that mother "went back and forth" about breastfeeding, which was a concern given mother's possible methamphetamine use.

Mother testified that she did not know she was pregnant and took herbal supplements to help lose weight. She claimed that although she was told she tested positive for methamphetamine, she had not used methamphetamine and had no idea why she tested positive. She testified (without providing any physical evidence) that she had six clean drug tests at various medical appointments between the May positive test and X.C.'s birth and that she was not told of any physical signs of withdrawals by X.C. She

5

admitted X.C had spent some time away from her after this birth, but disputed relevant details.

*Ruling on Jurisdiction*

The juvenile court amended the petition to delete the language regarding adequate provisions, but sustained the portion of the b-1 allegation that concerned the parents' denial of the Department's requested access to the children, explaining that M.C appeared hungry at the Boys and Girls Club and X.C. had only been back to the doctor once since his birth; because the parents did not sign releases, "Child Protective Services [was] in a position of not knowing what was going on." The court also noted that the parents would not allow CPS access to the family's living quarters and that the parents' refusal to cooperate had "create[d] a scene."

The juvenile court found the b-2 allegation regarding mother's drug related conduct true as to both minors, noting that her testimony was "suspect, at best" and finding that X.C. had displayed signs of withdrawal at birth and mother had subsequently refused to test. The b-3 allegation regarding father's drug-related criminal history and failure to test was also sustained.

*Evidence at Disposition*

The disposition report was filed on October 19, 2020, and admitted into evidence on October 28, 2020. After multiple continuances, a contested disposition hearing was held on January 5, 2021. An addendum report and amended addendum report were filed on December 23, 2020, and admitted into evidence at the hearing. The disposition reports do not contain any additional information that is significant to our analysis; in all three reports, the Department recommended reunification services for both parents, but concluded that the minors "cannot return to the care of their parents" due to mother's positive test while pregnant, father's drug-related criminal history, and the parents' continued failure to test or cooperate with the Department except to visit.

6

At the hearing, the ICWA expert testified and recommended the minors be removed. He testified his detriment conclusion as to father was based upon mother's use of methamphetamine during the pregnancy and father's failing to "engage mother in services to address those issues" and protect the minors.

The testimony from the parents' primary social worker centered on the parents' persistent failure to drug test. The social worker opined that the parents' refusal to "allow [CPS] to observe their living environment" and to drug test was "[a]n indicator of drug abuse." She added that both parents had a history of substance abuse and that father had a criminal history that "would suggest drug use." She confirmed that no "concerning behaviors" had been reported to her regarding M.C.[3]

*Ruling on Disposition*

The juvenile court rendered a cursory oral ruling finding both minors dependents and ordering services to both parents. It also completed form orders containing the requisite findings as to removal and the ICWA, and set a six-month review hearing.

Both parents timely appealed the jurisdiction and disposition orders. The case was fully briefed on August 5, 2021. The parties waived oral argument in October 2021.

**DISCUSSION**

I

*Jurisdiction*

The parents contend the evidence was insufficient to support jurisdiction over either minor. We first explain why we disagree as to the baby X.C. and then why we agree with the parents as to the older child, M.C.

---

[3] As the additional testimony of two lesser involved social workers adds nothing relevant to our analysis, we do not detail it here.

A. *Applicable Law*

The juvenile court has jurisdiction to declare a child to be a dependent of the court pursuant to subdivision (b) of section 300 when, as alleged in the petition in this case, the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness [¶] . . . [¶] by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse."

The Department has the burden to prove jurisdiction by a preponderance of the evidence. (§ 355, subd. (a); *In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.) We review the jurisdictional finding for substantial evidence, reviewing the record in the light most favorable to the judgment and drawing all reasonable inferences from the evidence to support the findings and orders of the dependency court. (*In re I.J.*, at p. 773.) Appellants have the burden of proving the evidence was insufficient to sustain the juvenile court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

"[W]ithout more, the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 764; *In re J.A.* (2020) 47 Cal.App.5th 1036, 1046, as modified (Apr. 20, 2020).) Thus, a parent's drug *use*, by itself, is not necessarily sufficient to support jurisdiction. However, the Legislature has declared that "[t]he provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (Welf. & Inst. Code, § 300.2.)

Section 355.1, subdivision (a) provides: "Where the court finds, based upon competent professional evidence, that an injury, injuries, or detrimental condition sustained by a minor, of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, . . . that

8

evidence shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300." (§ 300, subd. (a); see also *In re Stephen W.* (1990) 221 Cal.App.3d 629.) A finding that a baby is born a drug addict thereby creates a legal presumption that the baby is a child described by section 300, subdivision (b). (*In re Troy D.* (1989) 215 Cal.App.3d 889, 897.) Moreover, the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care, resulting in a substantial risk of harm to a minor of "tender years." (See *Drake M., supra,* 211 Cal.App.4th at p. 767; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216, 1219.) "Tender years" is defined as an age and state such that "the absence of adequate supervision and care poses an inherent risk to their physical health and safety" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824) and refers generally to children age six and younger (*In re Christopher R.*, at p. 1219).

A jurisdictional finding good against one parent is good against both. More accurately, the minor is a dependent if the actions of either parent bring him within one of the statutory definitions of a dependent. (*In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554.) This accords with the purpose of a dependency proceeding, which is to protect the child rather than prosecute the parent. (See, e.g., *In re Malinda S.* (1990) 51 Cal.3d 368, 384.)

B. *Analysis as to X.C.*

As we have explained in detail *ante*, mother tested positive for methamphetamine only three weeks before X.C.'s birth and many months after she admittedly knew she was pregnant, though her testimony on that point varied widely. Although she also testified that she had never used methamphetamine and had no idea why she tested positive, the juvenile court found her testimony "suspect" and did not credit it. While X.C.'s toxicology screen was negative at birth, he was born with symptoms of addiction.

Mother's prenatal drug use alone is probative of future neglect and indicates that the minor is in need of the court's protection. (*In re Monique T.* (1992) 2 Cal.App.4th

1372, 1378-1379; *In re Troy D, supra,* 215 Cal.App.3d at p. 899.) " '[T]he care of a minor . . . includes anticipatory actions,' and . . . 'mother conducted herself in a manner that was dangerous to the child prior to the child's birth but with full knowledge the child would be born.' " (*In re Troy D.*, at pp. 899-900.) Further, as we have described, mother had mentioned on several occasions that she was breastfeeding or intended to breastfeed X.C. As the social worker testified, this amplified the concerns stemming from mother's positive test, the baby's subsequent withdrawal symptoms, and mother's continuing refusal to drug test. This drug-related evidence coupled with lack of access and cooperation was sufficient to support jurisdiction over minor X.C. (See, inter alia, *In re E.E.* (2020) 49 Cal.App.5th 195, 209 [failure to cooperate in the investigation and participate in services may be used in later hearings on the § 300 petition even if the parents are under no legal obligation to cooperate with the social services agency]; Evid. Code, § 1228.1 [parents' failure to cooperate in the provision of services may be used as evidence in § 300 jurisdiction or disposition hearing].)

Because a jurisdictional finding against one parent is good against both, see *In re Jeffrey P.* , *supra*, 218 Cal.App.3d at pp. 1553-1554, we need not address the allegation pertaining to father in this portion of our analysis. We defer examination of the evidence regarding father's failure to protect to our discussion of the propriety of removal, *post*.

B. *Analysis as to M.C.*

The Department asserts this same information was sufficient to support jurisdiction over M.C. as well as X.C., but does not make a separate argument as to M.C. Although we have agreed with the Department that the evidence it recites in its briefing, the relevant portion of which we have set forth in this opinion, is sufficient to sustain the jurisdictional findings pertaining to mother and regarding the baby X.C., we cannot agree as to the older child, M.C.

As we have explained *ante*, the juvenile court found the jurisdictional allegation that the parents did not have adequate provisions to meet the minors' basic needs to be

*untrue*, leaving substance abuse and the failure to protect allegation stemming therefrom as the sole basis for jurisdiction. Unlike newborn X.C., who was born addicted and whose breastfeeding (from the same source as his addiction) posed a likely and specific danger to him given mother's refusal to test, eight-year-old M.C. does not appear to have faced any specific, defined risk of harm from the parents' past and possibly ongoing drug use. Although there was limited evidence of concerns about M.C.'s attendance at the Boys and Girls Club and the non-specific observation that he "seemed hungry" prior to his detention, there was no concern with his behavior and the record does not reflect a showing of *any* risk of serious physical harm or illness to him. Nor does the record reflect any evidence of failure or inability of the parents to provide M.C. with adequate supervision or protection *as a result of their substance abuse*, as would be required to support the sustained allegations in the petition. Although he was eight years old at the time of his detention in August 2020, and thus able to provide information about his previous living situation if asked, by the January 2021 detention hearing there was *no* new evidence presented about any risk of harm to him from the parents. There was no evidence he had made any statements or exhibited any behaviors or *anything* that would support a finding of risk; indeed, as we have explained, the social worker specifically confirmed that no "concerning behaviors" had been reported to her regarding M.C. " 'Certainly, it is possible to identify many possible harms that *could* come to pass. But without more evidence than was presented in this case, such harms are merely speculative.' " (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 769.)

We must therefore reverse the jurisdictional findings and vacate all subsequent findings and orders based on the petition at issue here as to minor M.C.[4]

---

[4] Of course, nothing in our opinion prevents the Department from filing a new section 300 petition on behalf of M.C. should additional facts present and additional

11

II

*Removal of Minor X.C.*

Appellants also contend there was insufficient evidence to support the dispositional findings and orders resulting in the removal of the minor X.C. from their custody. Mother makes the additional argument that insufficient evidence supports removal under the ICWA. We disagree.

A. *Applicable Law*

To support an order removing a child from parental custody, the court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor or would be if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parents' . . . physical custody." (§ 361, subd. (c)(1); *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) The court also must "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

Additionally, under the ICWA, a state court may not place a child in foster care "in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(e); see also Welf. & Inst. Code § 361(c)(6).)

Removal findings are reviewed under the substantial evidence test, drawing all reasonable inferences to support the findings and noting that issues of credibility are matters for the juvenile court. (*In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193.) These

---

circumstances warrant. (See *In re Jesse W.* (2001) 93 Cal.App.4th 349, 357 [double jeopardy rule does not apply in dependency cases].)

standards need also be met for removal under the ICWA. (*In re Collin E.* (2018) 25 CAl.App.5th 647, 660.) Evidence of past conduct may be probative of current conditions, particularly where there is reason to believe the conduct will continue in the future. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, abrogated on another ground in *In re R.T.* (2017) 3 Cal.5th 622.)

B. *Analysis*

We have explained *ante* that the ICWA expert recommended removal from father based upon mother's use of methamphetamine during her pregnancy and father's failing to "engage mother in services to address those issues" and protect the minors. Further, the juvenile court received into evidence at jurisdiction uncontested reports of father's history of multiple drug-related criminal convictions and arrests. Moreover, the prior child welfare history included information regarding father and showing a probable history of drug abuse; this information was also set forth in the jurisdiction report and thereby received into evidence by the juvenile court. That information included that in 2016 mother reported father had an issue with drug use, as well as that Butte County Children's Services had received a report in 2017 that both parents were using drugs. Further, a November 2019 referral alleged that both parents were dealing drugs out of the home. And the social worker testified at the detention hearing that she had been told by family members that father had a methamphetamine addiction.

Given all of this information and both parents' ongoing failure to test, there was simply no way for the Department or juvenile court to ensure that newborn X.C. would not be at risk of harm from involuntary ingestion of controlled substances from breastfeeding or some other form of poor judgment related to the parents' substance abuse absent removal from the home. While we agree that the need for removal certainly *may* have been prevented with regular substance abuse testing and supervision, the parents complete lack of cooperation with such efforts eliminated any alternative reasonable means to protect the newborn minor. Although father argues there was no

13

evidence he was unable to protect the minor from mother's drug use, we note that he had *already* failed to protect X.C. from prenatal exposure and addiction by the time the petition that led to X.C.'s removal was filed. That failure and the subsequent failure to cooperate in the Department's efforts to mitigate the risk to X.C. is evidence in and of itself of father's inability to protect X.C. from the ongoing possibility of mother's drug use and related risk of harm to X.C.

III

*Drug Testing Requirements*

Finally, father contends the juvenile court abused its discretion in requiring him to drug test as part of his case plan. He argues there was insufficient evidence to suggest he was using drugs. The Department counters that because X.C. came to the Department's attention only because of mother's apparent substance abuse, drug testing is a reasonable component of reunification services; however, the Department fails to address *father's* situation. Nonetheless, due to the evidence of father's drug-related criminal history and the fact that there was some evidence from family members and prior contact that he was using methamphetamine as we have outlined *ante*, we find no abuse of discretion.

A. *Applicable Law*

The overarching goal of dependency proceedings is to safeguard the welfare of California's children; family preservation is the first priority once proceedings have commenced. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.) At the dispositional hearing, the juvenile court must order services for minors and their parents to facilitate reunification of the family, unless it makes a finding such services need not be provided. (§ 361.5, subd. (a); Cal. Rules of Court, rule 5.695(g).) Reunification services are typically understood as a benefit provided to parents, because such services enable them to demonstrate parental fitness so as to regain custody of their dependent children. (*In re Nolan W.*, at p. 1228.)

14

Under section 362, subdivision (d): "The juvenile court may direct any and all reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out the provisions of this section . . . ." The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion dispositional orders in accord with this discretion. (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104; *In re Eric B.* (1987) 189 Cal.App.3d 996.) We will not reverse the juvenile court's determination in this regard absent a clear abuse of discretion. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

" '[A] reunification plan formulated to correct certain parental deficiencies need not *necessarily* address other types of conduct, equally deleterious to the well-being of a child, but which had not arisen at the time the original plan was formulated.' [Citation.] However, when the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan." (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1008.) "The juvenile court has authority to require a parent to submit to substance abuse treatment as part of a reunification plan as long as the treatment is designed to address a problem that prevents the child's safe return to parental custody." (*In re Nolan W.*, *supra*, 45 Cal.4th at p. 1229.)

B. *Analysis*

Here, as we have explained, the juvenile court was aware of father's history of substance abuse, which included several drug-related criminal convictions. Further, the parents' prior child welfare history was in evidence and included multiple reports of drug use and related activities by both parents from 2016 to 2019. The social worker's testimony about the family's reports of father's drug use was also relevant to the reasonableness of the testing requirement as well as to removal.

We have upheld the removal of baby X.C. specifically based on mother's documented substance abuse and father's history of substance abuse as well as his

15

inability to prevent any harm to the infant from mother's use. Both parents persisted in refusing to provide any assurance through drug testing and related cooperation that despite their respective histories they were able to care safely for their newborn baby. Under these facts, the juvenile court's testing order was not an abuse of discretion.

## DISPOSITION

The September 17, 2020 orders of the juvenile court asserting jurisdiction over minor M.C. based on the June 29, 2020 section 300 petition are reversed. The juvenile court is directed to dismiss the June 29, 2020 section 300 petition filed on behalf of minor M.C. and vacate all subsequent orders stemming therefrom.

The orders of the juvenile court as to minor X.C. are affirmed.


                                             /s/
                                          Duarte, J.


We concur:


    /s/
Robie, Acting P. J.


    /s/
Mauro, J.